# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 14, 2011 Session

## CHADWICK DAVID DORMAN MOYER v. NASHVILLE MIDNIGHT OIL, LLC, D/B/A CADILLAC RANCH

**Appeal from the Circuit Court for Davidson County**
**No. 09C1352     Amanda Jane McClendon, Judge**

---

**No. M2011-00808-COA-R3-CV - Filed January 11, 2012**

---

Plaintiff sued to recover for injuries sustained while riding a mechanical bull in a bar owned by Defendant. Defendant appeals the trial court's determination that it was 100% at fault and resulting judgment for plaintiff. Because the evidence does not preponderate against the trial court's findings, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

James Alvin Rose, Nashville, Tennessee, for the Appellant, Nashville Midnight Oil, LLC d/b/a Cadillac Ranch.

J. Robin McKinney, Jr., Nashville, Tennessee, for the Appellee, Chadwick David DormanMoyer.

## MEMORANDUM OPINION[1]

On April 26, 2008, Chadwick Moyer ("Plaintiff") injured his hand while riding a mechanical bull at Cadillac Ranch Rock-N-Country Bar & Grill in Nashville. Moyer subsequently filed a personal injury lawsuit against the owner and operator of Cadillac Ranch, Nashville Midnight Oil, LLC ("Defendant") and asserted a claim for negligence

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

based on Defendant's failure to supervise the operation of the mechanical bull and failure to train its staff to operate the bull.[2] Defendant answered the complaint and generally denied the allegations; Defendant also asserted as affirmative defenses that Plaintiff had signed a waiver and assumed the risk of riding the mechanical bull, and that Plaintiff was comparatively at fault.

The lawsuit proceeded to a bench trial, at the conclusion of which the court made certain findings and held that Defendant was 100% at fault for Plaintiff's injuries. In its oral ruling, the court found that the mechanical bull started moving before Plaintiff was ready and, with respect to one of the affirmative defenses, that engaging the bull before Plaintiff was ready would not have been "encompassed or contemplated by a signed waiver." The court thereafter entered an Order of Judgment awarding Plaintiff medical expenses in the amount of $6,328.94, making the additional finding "that the Plaintiff was credible," and stating that the court "credited his testimony as to the events surrounding the incident."

Defendant appeals, asserting that the trial court erred in finding that it was 100% at fault for plaintiff's injuries.

STANDARD OF REVIEW

We review the trial court's findings of fact *de novo* on the record, and we presume that the findings of fact are correct "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). Unless the evidence preponderates against the findings, we must affirm absent error of law. *Id; see also Fell v. Rambo*, 36 S.W.3d 837, 846 (Tenn. Ct. App. 2000). The presumption of correctness does not apply to conclusions of law, which we likewise review *de novo*. *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993); *Parks Properties v. Maury County*, 70 S.W.3d 735, 742 (Tenn. Ct. App. 2001).

DISCUSSION

Defendant contends that the trial court failed to apply the factors set forth in *Eaton v. McLain*, 891 S. W. 2d 587 (Tenn. 1994) when the court determined that Defendant was 100% at fault. Specifically, Defendant contends that "it is obvious that there are dangers inherent in participating in this recreational activity" and that "there can be little question that [Plaintiff] had the capacity to understand the risks inherent in participating on the mechanical bull." Although not expressly stated, Defendant appears to contend that Plaintiff assumed the risk of injury in riding the bull or that riding the bull, in and of itself, made Plaintiff comparatively at fault for his injuries. In resolving this issue, we look to the evidence in

---

[2] The complaint also named Hand Partnership, LP, owner of the property, as a defendant. Plaintiff voluntarily dismissed Hand from the lawsuit.

support of the court's finding, inasmuch as the court implicitly found no negligence on the part of the plaintiff.

Plaintiff testified that, on the night of his injury, he rode the bull three times consecutively and that during his first two rides the operator of the bull waited to engage the machine until Plaintiff signaled that he was ready; on his last attempt he did not give a ready signal, and the bull began moving as soon as he climbed on and put his left hand in the rope handle. Plaintiff testified that the sudden motion of the bull twisted his left hand and caused a laceration and broken finger.[3]

Roger Hughes, who operated the mechanical bull on the night Plaintiff was injured, testified that he waited to engage the bull until after Plaintiff indicated he was ready, and that Plaintiff was injured because he did not let go of the rope handle when he started to fall off.

In its ruling at the close of the proof the court stated:

Well, I believe the plaintiff. The thing that makes sense to me here is that the bull was started before he was ready. Whether it was done purposefully or not, I don't know. He had been a multiple rider, according to the last witness. She said he had ridden it at least five times. So I've heard from the defense that he was inebriated, obnoxious, in which case, that would kind of tend to show me that perhaps someone did start the bull too quickly on purpose.

In the Amended Order of Judgment, the court expressly found that Plaintiff was credible and credited his testimony regarding the events surrounding the incident.

The trial court is specially qualified to evaluate the credibility of witnesses by virtue of its ability to observe the demeanor of the witnesses as they testify. *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). As a consequence, trial courts are accorded substantial deference in resolving factual disputes based on the credibility of the witnesses. *Id.*; *see ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 24 (Tenn. Ct. App. 2005). The trial court found Plaintiff to be more credible and, in the absence of clear and convincing evidence to the contrary, we do not disturb that assessment. *Wells,* 9 S.W.3d at 783. The proof that Mr. Hughes began operating the mechanical bull before Plaintiff signaled that he was ready supports the trial court's finding that Defendant was 100% negligent.

With respect to the remainder of what purports to be Defendant's argument, Defendant's brief suffers from a lack of clarity in the propositions urged upon this Court. Defendant cites several cases from other jurisdictions and seemingly urges this court to hold

---

[3] Plaintiff's medical records were submitted as an exhibit at trial and show that plaintiff fractured his fourth metacarpal and suffered a 2 to 3 centimeter laceration to his thumb.

that there is an inherent risk which Plaintiff assumed when riding the bull.[4] Defendant also makes reference to a written waiver, but fails to make any argument relative to the significance of such waiver while conceding that it was not entered into evidence.[5]

In the instant case, the court found that Defendant was negligent in starting the bull before Plaintiff was ready and that Plaintiff was not negligent; the evidence does not preponderate against that finding. The evidence relative to whether Plaintiff signed a written waiver form was conflicting and, once again, the court found Plaintiff's testimony that he did not sign an agreement or waiver before riding the mechanical bull to be more credible. Thus, the trial court fully addressed Plaintiff's conduct in riding the bull.

CONCLUSION

For the foregoing reasons, the judgement of the Circuit Court for Davidson County is affirmed.

_____
RICHARD H. DINKINS, JUDGE

---

[4] The continued viability of the common law doctrine of assumption of risk in light of Tennessee's adoption of comparative fault in *McIntyre v. Ballentine*, 833 S.W.2d 52 (Tenn. 1992) was before the Tennessee Supreme Court in *Perez v. McConkey*, 872 S.W.2d 897 (Tenn. 1994). The Court in *Perez* abolished the doctrine of implied assumption of risk as a complete bar to recovery by an injured party, holding that the reasonableness of a party's conduct in confronting a risk should be determined under the principles of comparative fault; because express assumption of risk "stems from a contractual undertaking to relieve a potential defendant from any duty of care to an injured party," that doctrine was unaffected by the adoption of comparative fault. *Id.* at 899. Factors to be considered in determining the reasonableness of the plaintiff's conduct were set forth in the case of *Eaton v. McLain*, 891 S.W.2d 587 (Tenn. 1994).

[5] In the Summary of Argument section of its brief, Defendant states:

The trial court misapplied the law of Tennessee negligence to its judgment in favor of Plaintiff. Persuasive authority from other jurisdictions indicates that no liability should be placed on the operator of an amusement device where the proof shows that a written waiver was executed, albeit not offered into evidence, and where a plaintiff voluntarily risked danger in sport or amusement.